UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIGERGRAPH, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>BRENDON PEAK,<br><br>    Defendant. | Case No. 20-cv-05489-PJH<br><br>**ORDER DENYING MOTION TO DISMISS AND DENYING MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. No. 9 |

Before the court is defendant Brendon Peak's ("defendant") motion to dismiss and, in the alternative, motion to transfer venue. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court rules as follows.

**BACKGROUND**

On July 6, 2020, plaintiff TigerGraph, Inc. ("TigerGraph" or "plaintiff") filed a complaint ("Compl.") in San Francisco County Superior Court against defendant asserting one claim for declaratory relief. Dkt. 1-1. Defendant removed the case to federal court on August 6, 2020, (Dkt. 1), and now moves to dismiss the complaint for lack of personal jurisdiction, improper venue, and forum non conveniens, or, in the alternative, moves to transfer the case to the district court for the District of Massachusetts, (Dkt. 9).

Plaintiff is a Delaware corporation with its principal place of business in Redwood City, California. Compl. ¶ 1. TigerGraph is a technology company that provides a "graph analytics" platform to its customers. Id. ¶ 5. Defendant is an individual and former

employee of TigerGraph who resides in Hingham, Massachusetts. Id. ¶ 2.

On or about January 9, 2018, TigerGraph offered a letter agreement to defendant for his employment as a regional sales director, which Peak executed the following day. Id. ¶ 6, Ex. A. Under the terms of the letter agreement, defendant's employment was "at will," he received a base salary, and was eligible to receive additional commission based on annual sales targets. Id. ¶¶ 7–8. In 2019 and 2020, the parties entered into annual Sales Compensation Plans that provided for Peak's employee commission plan. Id. ¶ 9, Exs. C, D. Each new annual plan superseded and replaced the previous year's sales compensation plan. Id. ¶ 11.

Due to the COVID-19 pandemic, plaintiff determined that it could not afford to retain its entire workforce and on May 14, 2020, TigerGraph notified defendant that his employment with the company would terminate effective the next day. Id. ¶¶ 13–14. Plaintiff alleges that under the 2020 Sales Compensation Plan, commissions for orders that defendant made before his termination are paid when the customer pays plaintiff. Id. ¶ 16. With the exception of one customer who has yet to pay TigerGraph, TigerGraph alleges that it has paid Peak all commissions owed for customers who have already paid TigerGraph. Id. On June 24, 2020, defendant threatened to file a lawsuit against plaintiff if it would not agree to pay Peak commission on terms different than the Sales Compensation Plans required and for commissions on uncertain potential orders where no actual signed order existed prior to defendant's termination. Id. ¶ 17. On July 6, 2020, plaintiff filed this declaratory relief action for a declaration that Peak has been fully compensated by TigerGraph for all commissions owed to him under the Sales Compensation Plans on accepted orders and Peak is not entitled to future commissions on uncertain potential orders where the orders were obtained by other TigerGraph employees or made and accepted after Peak's termination. Id. ¶ 20, Prayer for Relief.

Separately, on August 10, 2020, defendant filed a complaint against TigerGraph and two of the company's executives and a related company, GraphSQL, Inc., in the district court for the District of Massachusetts. See Peak v. TigerGraph, Inc., et al., No.

20-cv-11496 (D. Mass.).

## DISCUSSION

**A.  Legal Standard**

    **1.  Rule 12(b)(2)**

The party seeking to invoke a federal court's jurisdiction bears the burden of demonstrating jurisdiction.  Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015).  A federal court may dismiss an action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  When resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court accepts uncontroverted facts in the complaint as true and resolves conflicts in affidavits in the plaintiffs' favor.  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).  "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  Daimler AG v. Bauman, 571 U.S. 117, 125 (2014); see Fed. R. Civ. Proc. 4(k)(1)(a).  California's long arm statute permits exercise of personal jurisdiction to the fullest extent permissible under the U.S. Constitution, therefore, the court's inquiry "centers on whether exercising jurisdiction comports with due process."  Picot, 780 F.3d at 1211; see Cal. Code Civ. Proc. § 410.10.

The Due Process Clause of the Fourteenth Amendment "limits the power of a state's courts to exercise jurisdiction over defendants who do not consent to jurisdiction."  Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014).  Due process requires that the defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted) (citations omitted).  Under the "minimum contacts" analysis, a court can exercise either "general or all-purpose jurisdiction," or "specific or conduct-linked jurisdiction."  Daimler, 571 U.S. at 121–22 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

    **2.  Rule 12(b)(3)**

"The district court of a district in which is filed a case laying venue in the wrong

division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  If a defendant files a motion pursuant to Federal Rule of Civil Procedure 12(b)(3) to dismiss for improper venue, it is the plaintiff's burden to establish that venue is properly in the district where the suit was filed.  Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979).  In considering a motion to dismiss under Rule 12(b)(3), a court need not accept the pleadings as true and may consider facts outside the pleadings.  See Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996).

Where venue is improper, a court has discretion to dismiss the case pursuant to Rule 12(b)(3) or transfer the case in the interests of justice to an appropriate jurisdiction under 28 U.S.C. § 1406(a).  See King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992) (per curiam).

### 3. 28 U.S.C. § 1404

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).  The party moving for transfer for the convenience of parties and witnesses the burden of demonstrating transfer is appropriate.  Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).  In considering a § 1404(a) motion to transfer, the court must look at each of the enumerated factors—whether the action could have been brought in the proposed transferee district, the convenience of the parties, the convenience of the witnesses, and the interests of justice.  Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).

If the action could have been brought in the transferee venue, the court then must determine if the defendant has made a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum" by considering private factors relating to "the convenience of the parties and witnesses" and public factors relating to "the interest of justice," including "the administrative difficulties flowing from court congestion and [the] local interest in having localized controversies decided at home." Decker Coal Co. v.

1  Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (internal quotation marks
2  omitted).
3  　　　　Courts in this district commonly examine the following factors to determine
4  convenience and fairness under § 1404(a): (1) the plaintiff's choice of forum, (2) the
5  convenience of the parties, (3) the convenience of the witnesses, (4) the ease of access
6  to the evidence, (5) the familiarity of each forum with the applicable law, (6) the feasibility
7  of consolidation with other claims, (7) any local interest in the controversy, and (8) the
8  relative court congestion and time to trial in each forum.  Williams v. Bowman, 157 F.
9  Supp. 2d 1103, 1106 (N.D. Cal. 2001) (citation omitted); see Jones v. GNC Franchising,
10 Inc., 211 F.3d 495, 498–99 (9th Cir. 2000).  Courts may examine all these factors, but
11 "[n]o single factor is dispositive."  Ctr. for Biological Diversity v. Kempthorne, 2008 WL
12 4543043, at *2 (N.D. Cal. Oct. 10, 2008) (citing Stewart Org., Inc. v. Ricoh Corp., 487
13 U.S. 22, 29 (1988)).  The weighing of the factors for and against transfer is within a trial
14 court's discretion.  Ventress v. Japan Airlines, 486 F.3d 1111, 1118 (9th Cir. 2007)
15 (citation omitted).

**B.   Analysis**

**1.   Personal Jurisdiction**

Defendant argues he is not subject to the court's personal jurisdiction because he was at all relevant times a resident of Massachusetts and his work for TigerGraph occurred there.  Mtn. at 11.  Both parties agree that the letter agreement between the parties contains a forum-selection clause but differ as to its applicability in this case.

A valid forum-selection clause operates as consent to a court's personal jurisdiction.  As explained by the Supreme Court:

> because the personal jurisdiction requirement is a waivable right, there are a "variety of legal arrangements" by which a litigant may give "express or implied consent to the personal jurisdiction of the court."  For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction.  Where such forum-selection provisions have been obtained through "freely negotiated" agreements and are not "unreasonable and unjust," their enforcement does not offend

due process.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985) (citations omitted); S.E.C. v. Ross, 504 F.3d 1130, 1149 (9th Cir. 2007) ("[P]arties may consent to jurisdiction through a forum selection clause in a contract.").

Defendant advances two arguments why the forum-selection clause in his letter agreement is not valid: the complaint seeks declaratory judgment of a different agreement and the letter agreement's forum-selection clause is unenforceable.

### a. Whether the Forum-Selection Clause Applies

Courts "apply federal law to the interpretation of the forum selection clause," Doe 1 v. AOL LLC, 552 F.3d 1077, 1081 (9th Cir. 2009) (citing Manetti–Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988)), and "look for guidance 'to general principles interpreting contracts,'" id. (quoting Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999)).

Defendant argues the letter agreement's forum-selection clause does not apply because plaintiff is seeking a declaratory judgment under the Sales Compensation Plan agreements, not the letter agreement. Mtn. at 11. According to defendant, the Sales Compensation Plans are standalone agreements that do not contain any forum-selection clause. Id. at 12. Further, the Sales Compensation Plans do not incorporate by reference the offer letter and purportedly supersede all other plans and agreements. Id.

Plaintiff responds that a forum-selection clause is a distinct contract in and of itself and is separate from the obligations that the parties owe each other under the remainder of the letter agreement. Opp. at 3. Plaintiff further contends that the Sales Compensation Plans only set the criteria under which defendant could earn a commission, did not create a separate right or entitlement to compensation, and are not distinct, standalone agreements. Id.

The letter agreement between the parties provided as follows:

> This letter agreement and Exhibit A constitute the complete agreement between you and the Company, contain all of the terms of your employment with the Company and supersede

6

> any prior agreements, representations or understandings . . . between you and the Company. This letter agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company. The terms of this letter agreement and the resolution of any disputes as to the meaning, effect, performance or validity of this letter agreement or arising out of, related to, or in any way connected with, this letter agreement, your employment with the Company or any other relationship between you and the Company (the "Disputes") will be governed by California law, excluding laws relating to conflicts or choice of law. You and the Company submit to the exclusive personal jurisdiction of the federal and state courts located in San Francisco County in connection with any Dispute or any claim related to any Dispute.

Compl., Ex. A at 11.[1]

There is no dispute between the parties that the letter agreement constituted a valid agreement. If applicable, the letter agreement's forum-selection clause provides for "exclusive personal jurisdiction" of federal and state courts in San Francisco County in connection with any "Disputes," which is a defined term. The defined term "Disputes" extends to "the resolution of any dispute[] . . .arising out of, related to, or in any way connected with . . . your employment with the Company or any other relationship between you and the Company." Id. Thus, the applicability of the forum-selection clause turns on whether this suit arises out of, is related to, or is in any way connected to the letter agreement.

"Courts should construe a clause containing the phrases 'arising under,' 'arising out of,' or similar language narrowly to cover disputes 'relating to the interpretation and performance of the contract itself.'" Bromlow v. D & M Carriers, LLC, 438 F. Supp. 3d 1021, 1027 (N.D. Cal. 2020) (quoting Cape Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 922 (9th Cir. 2011)). However, a clause that covers disputes "relating to" an agreement "is broader and covers any dispute with some 'logical or causal connection' to the agreement." Id. (quoting Yei A. Sun v. Advanced China Healthcare, Inc., 901 F.3d 1081, 1086 (9th Cir. 2018)). "The dispute need not grow out of the contract or require

---

[1] Pin citations to exhibits attached to the complaint reference the electronically stamped ECF page numbers at the top of each page.

7

interpretation of the contract in order to relate to the contract." Sun, 901 F.3d at 1086 (citations omitted).

Applying here, the forum-selection clause uses the broader language of "related to" and "in any way connected with" and therefore applies to disputes that have a logical or causal connection to the letter agreement. Plaintiff's declaratory judgment action has such a logical connection to the letter agreement because the declaratory judgment action relates to sales commissions owed in the course of employment between an employee and his former company. This implicates the employment relationship and compensation terms provided for in the letter agreement. Indeed, the definition of a "Disupte[]" includes defendant's "employment with the Company or any other relationship between you and the Company." Compl., Ex. A at 11. Therefore, this action falls within the broad definition of a "Dispute[]" and the letter agreement's forum-selection clause applies to this case.

Defendant argues that the Sales Compensation Plans displace the letter agreement because TigerGraph's complaint seeks adjudication of the parties' rights and obligations under those Sales Compensation Plans. The court disagrees. While the terms of the Sales Compensation Plans are necessary to plaintiff's declaratory relief action, the letter agreement is a binding contract and its forum-selection clause applies beyond interpretation of the letter agreement itself. As cited above, a "dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract." Sun, 901 F.3d at 1086. For the reasons stated above, this case falls within the scope of the forum-selection clause.

Next, defendant contends that the Sales Compensation Plans superseded the letter agreement. They did not. The Sales Compensation Plans operate on one-year terms, (see id., Ex. C) and "supersede[] and replace[] all other sales compensation plans and/or programs in which sales personnel participate." Id., Ex. C at 20. Defendant argues that language at the end of the agreement supersedes the letter agreement. The language in question provides: "I understand that all agreements between myself and the

1  Company concerning compensation are included in this Plan, which supersedes all other
2  plans and agreements." Id. at 24.  Defendant's reading of the dependent clause at the
3  end of the sentence ignores the limitation preceding it, that is, all agreements concerning
4  compensation are superseded by the current agreement.  This reading accords with the
5  language at the beginning of the agreement that the current Sales Compensation Plan
6  supersedes and replaces all other sales compensation plans and/or programs in which
7  sales personnel participate.  At the very least, the Sales Compensation Plans do not
8  supersede the forum-selection clause that does not concern compensation.

9       Finally, defendant argues that the Sales Compensation Plans did not incorporate
10 by reference the terms of the letter agreement.  Mtn. at 12.  This argument is misplaced.
11 The letter agreement governed the general terms of employment, including dispute
12 resolution, between the parties; the Sales Compensation Plans governed annual sales
13 compensation to TigerGraph's sales employees.  Both agreements governed separate
14 (but related) aspects of defendant's employment and need not be incorporated by
15 reference to apply in this case.  As long as the letter agreement was a valid contract
16 between the parties, then its forum-selection clause applies to any "Dispute[]" as that
17 term is defined by the letter agreement.

18      The cases cited by defendant are distinguishable.  For example, in KedKad v.
19 Microsoft Corp., 2013 WL 4734022, at *4 (N.D. Cal. Sept. 3, 2012), the district court
20 determined that an employment agreement between the plaintiff and defendant did not
21 contain a forum-selection clause on its face and did not incorporate by reference a Libyan
22 national law, which itself did not provide for exclusive venue.  The court found persuasive
23 the fact that an earlier employment agreement between the parties included an exclusive
24 forum-selection clause, which was then omitted from the operative agreement.  See id.
25 Unlike KedKad, defendant's employment agreement in this case has a forum-selection
26 clause.

27      By their terms, the Sales Compensation Plans did not supersede the letter
28 agreement and the forum-selection clause in the letter agreement applies to this dispute

9

between the parties.

### b. Whether the Forum Selection Clause is Unenforceable

"Because forum selection clauses are presumptively valid, they should be honored 'absent some compelling and countervailing reason.'" Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972)). In Bremen, the Supreme Court recognized three exceptions that renders enforcement of a forum-selection clause unreasonable: (1) "if the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) "if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; or (3) "if enforcement would contravene a strong public policy of the forum in which suit is brought." Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir. 1998) (quoting Bremen, 407 U.S. at 12–13, 15, 18). "The party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'" Murphy, 362 F.3 at 1140 (quoting Bremen, 407 U.S. at 15).

In the context of employment agreements, other circumstances may be taken into account including: (1) "any power differentials which may exist between the two parties to the contract," (2) the educational background of the party challenging the clause, (3) the business expertise of the party challenging the clause, and (4) the "financial ability to bear [the] costs and inconvenience" of litigating in the forum selected by the contract. Murphy, 362 F.3d at 1141 (alteration in original) (quoting Spradlin v. Lear Mgmt. Servs. Co., 926 F.2d 865, 868–69 (9th Cir. 1991)).

Defendant advances several arguments why the forum-selection clause is unenforceable. None are persuasive. First, he argues that the forum-selection clause is unreasonable because it contravenes California's public policy against extraterritorial application of another state's law to govern an employment relationship. Mtn. at 14. Defendant is a Massachusetts resident and TigerGraph employed him in Massachusetts. Declaration of Brendon Peak, ("Peak Decl."), Dkt. 9-1, ¶ 2. According to defendant,

California Labor Code § 925 provides that California employers may not require California employees to sign employment agreements that mandate a venue and choice of law provision outside California and defendant asserts that this policy is analogous to his situation because he is being forced to litigate outside his home forum. Mtn. at 14.

A forum-selection clause is unenforceable "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." Doe 1, 552 F.3d at 1083 (quoting Bremen, 407 U.S. at 15) (emphasis omitted). Defendant identifies a statute, California Labor Code § 925, yet a plain reading of that provision demonstrates that it does not apply to him because he does not reside or work in California. See Cal. Labor Code § 925(a) ("An employer shall not require an employee who primarily resides and works in California . . . ."). Defendant cites no other California authority establishing the strong public policy he seeks. Without such authority, none of the cases that found forum-selection clauses to be unreasonable are applicable. See, e.g., Philo v. Giftango LLC, 2013 WL 12097545, at *5 (S.D. Cal. Feb. 7, 2013) (finding non-compete and non-solicitation covenants are not enforceable against employees based on Cal. Bus. & Prof. Code § 16600).

Second, defendant argues that it is improper to enforce a forum-selection clause for a forum where neither party has any connection. Mtn. at 14–15. This assertion cannot be credited. Plaintiff's principal place of business is Redwood City, California, which is within the Northern District of California. The connection between the agreement's chosen forum and plaintiff's location is straightforward: both are in this judicial district. See also Civ. L.R. 3-2(d) (providing that all civil actions arising in San Francisco or San Mateo counties shall be assigned to the San Francisco division or the Oakland division).

Third, defendant contends that it would be a substantial hardship for him, a Massachusetts resident who was employed in Massachusetts, to litigate in a California court. Mtn. at 15. As stated by the Ninth Circuit, "courts are to consider a party's financial ability to litigate in the forum selected by the contract when determining the

1  reasonableness of enforcing a forum selection clause." Murphy, 362 F.3d at 1141–42
2  (citing Spradlin, 926 F.2d at 869). Defendant avers that it would be a substantial
3  hardship to litigate in California and he does not have the time, money, or ability to travel
4  to California on a periodic basis. Peak Decl. ¶ 16. As an initial matter, defendant's
5  declaration lacks any specificity that would establishes his inability to prosecute this
6  action in California. Cf. Murphy, 362 F.3d at 1142 (citing declaration where the plaintiff
7  averred that he was unable to work, earned no income, and lived on disability payments).
8  As a practical matter, virtually all pre-trial motion practice can occur remotely, the parties
9  can address any discovery hardships to the court, and any travel to California would likely
10 be limited to a trial.[2] Without a more specific showing, defendant cannot overcome the
11 presumptive enforceability of the forum-selection clause.
12       Finally, according to defendant, the forum-selection clause was a product of
13 overreaching because there was no opportunity for negotiation. Mtn. at 15.
14 Overreaching is generally seen as "a ground short of fraud." Murphy, 362 F.3d at 1141.
15 In Murphy, the Ninth Circuit found a similar overreaching contention unpersuasive
16 because even if the plaintiff's "contract was not negotiable, [the plaintiff] had the
17 opportunity to seek work with other employers if he opposed the forum selection clause."
18 Id. While defendant has filed a declaration stating that he did not have the opportunity to
19 negotiate any of the terms of the letter agreement, (Peak Decl. ¶ 3), plaintiff has provided
20 declarations from its employees that Peak, in fact, negotiated portions of his employment
21 agreement with TigerGraph. Opp. at 7–8 (citing Declaration of Todd Blaschka ("Blaschka
22 Decl."), Dkt. 12-1, ¶ 3; Declaration of Keiri Riku ("Riku Decl."), Dkt. 12-2, Ex. A). Thus, as
23 a factual matter, plaintiff has controverted defendant's contention. As a legal matter,
24 even if defendant's employment agreement was not negotiable, Murphy indicates that he
25 had a final bargaining chip, which was to seek work with other employers. Thus,

---

[2] The court further notes that in person civil jury trials in the current pandemic are unlikely to occur. The court expects both parties to take all reasonable precautions to minimize exposure to COVID-19 in the course of conducting discovery.

defendant has not established overreaching on the part of plaintiff.

In sum, defendant has not met his "heavy burden of proof" to demonstrate that the forum-selection clause is invalid. Bremen, 407 U.S. at 15. For the foregoing reasons, defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

### 2. Improper Venue

Next, defendant argues that the complaint should be dismissed for improper venue because he resides in a different venue, a substantial part of the events giving rise to TigerGraph's claims did not occur in this district, and venue is appropriate in the District of Massachusetts. Mtn. at 16. Defendant contends that plaintiff's declaratory relief arises from Peak's work for TigerGraph, which occurred in Massachusetts. Id. Further, Peak signed the agreements at issue in Massachusetts. Id.

Plaintiff responds that TigerGraph faces liability in this district based on defendant's claims to entitlement of commissions owed to him. Opp. at 12–13. According to plaintiff, because it has alleged that defendant entered into a contract with TigerGraph and TigerGraph faces harm in this district, that is sufficient to satisfy venue. Id. at 13.

Because defendant is a resident of Massachusetts, the only basis for venue in this district is whether a substantial part of the events giving rise to plaintiff's claims occurred in the Northern District of California. See 28 U.S.C. § 1391(b)(2). The nature of plaintiff's claim in this case is for declaratory relief based on annual sales compensation contracts between the parties. The essence of plaintiff's suit is whether TigerGraph was in breach of or whether it complied with those agreements.

To determine venue in cases involving contract disputes, "courts have 'looked to such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'" Richmond Techs., Inc. v. Aumtech Bus. Solutions, 2011 WL 2607158, at *10 (N.D. Cal., July 1, 2011) (quoting Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005)). In Richmond Technologies, the court determined that venue was proper in the Northern District of California where the

plaintiffs entered into and performed their contracts in this district, even though the defendants "may have executed and performed their contracts in other locations." Id.

Here, it is clear that the parties contemplated defendant to perform his employment in Massachusetts. Compl., Ex. A at 9 ("This is a full-time position located Massachusetts."). Peak avers that he lived and worked from Massachusetts during the entire term of his employment. Peak Decl. ¶ 2. Thus, it is reasonable to assume that defendant performed under the Sales Compensation Plans from Massachusetts.

However, it is also evident that plaintiff TigerGraph performed its portion of the agreements from this district. TigerGraph's chief operating officer, Todd Blaschka, avers that he is a resident of California and both indirectly and directly managed Peak's employment as regional salesperson. Blaschka Decl. ¶ 2. He further states that he was involved in determining and implementing annual commission agreements for sales personnel, including for Peak. Id. ¶ 5. Further, TigerGraph's principal place of business is in this district. Compl. ¶ 1. It is plaintiff's burden to establish venue, but the declarations and complaint are sufficient to establish that plaintiff's place of performance under the Sales Compensation Plans was the Northern District of California and a substantial part of the acts or omissions relevant to plaintiff's claim occurred in this district. Accordingly, venue is appropriate under section 1391(b)(2).

In his reply brief, defendant cites several cases for the proposition that "the court first considers what acts or omission by the defendants give rise to the plaintiffs' claims." Reply at 12 (quoting United Tactical Sys. LLC v. Read Action Paintball, Inc., 108 F. Supp. 3d 733, 754 (N.D. Cal. 2015)). The court takes no issue with this proposition because venue under section 1391(b)(2) may be proper in multiple districts. Doe v. Epic Games, Inc., 435 F. Supp. 3d 1024, 1039 (N.D. Cal. 2020); see also Gulf Ins. Co., 417 F.3d at 356. However, a declaratory judgment action focuses on plaintiff's acts or omissions because plaintiff is seeking a declaration that it did not breach the agreement between the parties. Thus, the acts or omissions of TigerGraph are relevant to its declaratory relief claim and a substantial part of those acts or omission occurred in this district.

14

For the foregoing reasons, defendant's motion to dismiss for improper venue is DENIED.

### 3. Forum Non Conveniens

Defendant argues that the complaint should be dismissed for forum non conveniens. Mtn. at 17. "The common-law doctrine of forum non conveniens 'has continuing application [in federal courts] only in cases where the alternative forum is abroad,' and perhaps in rare instances where a state or territorial court serves litigational convenience best." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007) (quoting Am. Dredging Co. v. Miller, 510 U.S. 443, 449, n.2 (1994); and citing 14D C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3828, pp. 620–623, and nn. 9–10 (3d ed. 2007)). "For the federal court system, Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." Id. (citing 28 U.S.C. § 1404(a)).

In this case, defendant identifies the district court for the District of Massachusetts as the adequate alternative forum. The doctrine of forum non conveniens is not applicable in this situation. For the foregoing reasons, defendant's motion to dismiss for forum non conveniens is DENIED.

### 4. Motion to Transfer

In the alternative, defendant moves to transfer the case to the District of Massachusetts pursuant to title 28 U.S.C. § 1404(a). Mtn. at 20. A district court considering a § 1404(a) motion should give "controlling weight" to a valid forum selection clause "in all but the most exceptional cases." Atl. Marine Constr. Co. v. U.S. Dist. Court, 571 U.S. 49, 63 (2013) (citation omitted). A valid forum selection clause changes the court's usual Section 1404(a) analysis in three ways. First, a plaintiff's choice of forum merits "no weight." Id. Second, the court may "consider arguments about public-interest factors only" since the parties stipulated to a particular forum. Id. at 64. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's

choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." Id. (citation omitted).

Finally, the party opposing transfer "must bear the burden of showing the public-interest factors overwhelmingly disfavor a transfer." Id. at 67. "A court may consider public interest factors, but such factors will rarely defeat a motion to transfer in the face of a valid, applicable forum-selection clause." Bromlow, 438 F. Supp. 3d at 1027 (citing Sun, 901 F.3d at 1088).

Here, defendant first argues that the public factors weigh heavily in favor of a Massachusetts forum because the United States Courts website shows more cases pending per active judgeship in this district than in the District of Massachusetts. Mtn. at 17–18. Plaintiff advances no specific argument other than citing the heavy burden of proof to overturn a plaintiff's choice of forum and a forum-selection clause. Opp. at 14–15.

"The relative docket congestion of the respective forums may be relevant to the Court's decision on whether to transfer." Martin v. Glob. Tel*Link Corp., 2015 WL 2124379, at *6 (N.D. Cal. May 6, 2015) (citing Ctr. for Food Safety v. Vilsack, 2011 WL 996343, at *8 (N.D. Cal. Mar. 17, 2011)). "This factor examines whether a trial may be speedier in another court because of its less crowded docket. To measure congestion, courts compare the two fora's median time from filing to disposition or trial." Ctr. for Food Safety, 2011 WL 996343, at *8 (internal quotation marks and citations omitted).

Here, court statistics do not clearly point to the District of Massachusetts as the speedier forum. The median time from filing to disposition in civil cases in Massachusetts for the past two years was 36.3 months for the year ending March 31, 2019 and 12.5 months for the year ending March 31, 2020. Declaration of Wendy Sugg ("Sugg Decl."), Dkt. 9-2, Ex. 2. The time from filing to trial for the same two time periods was 30 and 32.9 months, respectively. Id. By comparison, the median time from filing to disposition in civil cases in the Northern District of California for the same time periods was 7.9 and 8.2 months. Id. The median time from filing to trial was 28.4 and 22 months. Id. Thus,

the median time from filing to disposition indicates that both trial and/or ultimate disposition are speedier in this district.  This factor does not favor transfer.

Next, defendant argues that TigerGraph's claim indisputably involves Massachusetts employment and such a claim should be decided in Massachusetts under Massachusetts law.  Mtn. at 18.  It is not clear at this stage however that the court would apply Massachusetts law to plaintiff's declaratory relief claim.  The letter agreement between the parties includes a provision that any "Dispute[]" "will be governed by California law, excluding laws relating to conflicts or choice of law."  Compl., Ex. A. at 11.  Because the court has determined that the forum-selection clause applies and this action is a "Dispute" as used in the letter agreement, it appears that at least some part of this action will involve application of California law.

In this case, the public interest factors cited by defendant do not rise to the level necessary to disrupt the forum-selection clause between the parties.  For the foregoing reasons, defendant's motion to transfer is DENIED.

## CONCLUSION

For the reasons stated, defendant's motion to dismiss is DENIED and defendant's alternative motion to transfer is also DENIED.

**IT IS SO ORDERED.**

Dated: October 21, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge